Aaron D. WEINBERGER, as administrator of the Estate of Jeremiah Benjamin Weinberger, Aaron David Weinberger, as father of Jeremiah Benjamin Weinberger, Plaintiff–Appellant,

v.

STATE OF WISCONSIN, Donna Chester, Probation Officer and as yet unnamed probation officers and employees, Defendants–Appellees.

No. 95–3398.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1996.

Decided Jan. 31, 1997.

Frederick F. Cohn (argued), Chicago, IL, for Plaintiff–Appellant.

James E. Doyle, Michael Losse (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Jeremiah Benjamin Weinberger was murdered by Jeffrey Dahmer. Aaron David Weinberger, the father of Jeremiah Weinberger and administrator of his estate, brought this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 against the State of Wisconsin, Dahmer's probation officer Donna Chester, and other unnamed probation officers and employees. Mr. Weinberger alleged that the defendants acted unreasonably, in a grossly negligent manner, and with reckless disregard for the safety of persons in the class of Dahmer's abuse victims by mismanaging Dahmer's supervision. The district court granted the defendants' summary judgment motion; it also dismissed the claim against the unnamed state officers. Mr. Weinberger now appeals. For the reasons that follow, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

On or about July 6, 1991, Jeremiah Benjamin Weinberger was murdered by Jeffrey Dahmer. Jeremiah's father, the administrator of his son's estate, alleges that the conduct of the defendants in supervising the probation of Jeffrey Dahmer caused and precipitated Dahmer's murderous act. His central allegation is that the defendants "violated their own rules and procedures for supervising criminals under order of probation, in not visiting the apartment or residence of Jeffrey Dahmer as they had an obligation to

do while he was on probation." R.27 para. 3. As a result, Mr. Weinberger alleges, Dahmer was encouraged to commit murderous acts, including the murder of plaintiff's son.

Mr. Weinberger focuses on the conduct of Dahmer's probation officer, Donna Chester. Donna Chester, a probation and parole agent for the State of Wisconsin, assumed that position on January 9, 1990. After initial agent's training, she was placed in the Sex Offender Unit in Milwaukee. On March 9, 1990, Officer Chester was assigned the caseload of a departing agent. One of the 121 active cases was the case of Jeffrey Dahmer. Dahmer had been convicted of second degree sexual assault and of enticing a child for immoral purposes; the victim was a thirteen year-old boy. For these crimes, he had been sentenced, on May 24, 1989, to one year in the Milwaukee House of Correction (with work release privileges) and to five years of probation. Dahmer's probation required alcohol treatment and forbad contact with anyone under the age of 18.

Officer Chester met with Dahmer from the time of his release in late March or April 1990 until July 18, 1991. After that date, he was arrested and his probation revoked. During the time that she supervised Dahmer, Officer Chester met with him approximately twice a month. Her bimonthly appointments with Dahmer lasted from 10 minutes to 1 hour, usually for more than half an hour. She stated in her affidavit that she "tended to spend more time in counseling with Dahmer than average for [her] clients." R.10 para. 10. They discussed such concerns as his sexual orientation, money difficulties, bankruptcy considerations, holidays with his father and brother, fears about the dangerousness of his neighborhood, and depression. As the district court set forth in detail, see Weinberger v. Wisconsin, 906 F.Supp. 485 (W.D.Wis.1995), Officer Chester arranged his enrollment in an out-patient alcohol treatment program at the DePaul Rehabilitation Hospital, which lasted from May 22 to November 10, 1990. Dahmer met the DePaul

counselor from one to three times a week and had access to a psychiatrist and psychologist. The counselor reported regularly to Officer Chester that Dahmer was fully cooperative and seemed to be making progress. Officer Chester also arranged for Dahmer to be seen in the probation office's clinical services program, which included appointments with a psychiatrist, and in the Milwaukee Mental Health Complex. She referred him to money management agencies and monitored his progress, but left him to take some initiative and responsibility by carrying through on the first contacts she made. She later referred him to a support group for gay men at the Counseling Center. However, her attempt to enroll Dahmer in a sex offender treatment program failed; he was rejected because his crime did not fit the typical scenario of the child molester.

Dahmer was a compliant client, "one of the most cooperative clients [Officer Chester] ever worked with." R.10 para. 17. He was employed at the Ambrosia Chocolate Company nearly the entire time Officer Chester was in contact with him. He created almost no problems; he missed or was late for only one or two appointments and his urine tests were always negative for alcohol.[1] When Officer Chester believed it was necessary to have an assessment of Dahmer, she ordered him to go for an evaluation. In October 1990, the probation officer arranged for Dahmer to see a psychiatrist at DePaul. As usual, he complied, but told Officer Chester that he could not afford the antidepressant medication prescribed. She then advised him concerning his money-spending habits, his lack of priorities and negative attitude. However, after her May 13, 1991 appointment with Dahmer, in which he told her of a strangling in his apartment complex and his desire to move from there, she did more than advise him: She contacted the ABC Budget Company for him.

On May 27, 1991, Officer Chester arranged an evaluation of Dahmer with a consulting

---

1. In September 1990, one urine test (of the three he took each week) came back positive for valium. R.10 para. 11. Officer Chester ordered Dahmer to appear at her office, demanded an explanation and ordered a second urine analysis. When Dahmer told her that the medication was left over from a prior treatment, she warned him to cease taking any medication not currently prescribed. The result of the second test was negative.

psychiatrist, Dr. Crowley. The assessment revealed no serious mental disorder, no indication of dangerousness to himself or others, and no suggestion that she should spend additional effort with Dahmer. Dahmer continued to see Dr. Crowley; at his July 8 appointment with Officer Chester, Dahmer told her that he was making progress with the psychiatrist. Nevertheless, he reported a concern that he might be fired for missing work and talked about suicide. Officer Chester counseled him regarding his employment problem; however, because he seemed fully functional, she believed she did not have grounds to seek commitment or otherwise to detain him.

Dahmer missed his July 10 appointment with Dr. Crowley and did not immediately notify Officer Chester about this lapse. When he called Officer Chester on July 16 to tell her that he had lost his job two days before and that he was depressed and drinking beer, she ordered him to report to her office as soon as possible and made an appointment for him to see Dr. Crowley the same day. Dahmer called Officer Chester to tell her that he had slept through his appointment with Dr. Crowley; however, he did report to Officer Chester's office on July 18 and again talked about committing suicide. Officer Chester counseled him concerning his employment problems and called the Salvation Army to assist him with food and shelter. Dahmer then went to his make-up appointment with Dr. Crowley that day. Dr. Crowley's progress notes indicated that Dahmer had been feeling better before he was terminated from his job. The physician prescribed a medication for anxiety and advised Dahmer to return in a week. He did not recommend that Officer Chester supervise Dahmer more closely or take any other actions.

On July 23, 1991, Officer Chester was informed that Dahmer had been arrested the day before for various homicides. In her affidavit, the probation officer states: "Up to this point in time I had no legitimate or lawful grounds under departmental policies and rules to take Dahmer into custody or to revoke his probation." R.10 para. 40. After Dahmer's arrest, Officer Chester learned, for the first time, that he had violated his parole by failing to report a contact with the police on May 27, 1991 and by making an unauthorized trip to Chicago on June 30, 1991. These two violations were the basis for the revocation of Dahmer's parole. Officer Chester also stated that she "never had any grounds to take any disciplinary action against Dahmer or to suspect that home visits would have been of material benefit in his supervision." *Id.* para. 42.

Officer Chester did not make any home visits to Dahmer. She requested permission to forego these visitations from her supervisor and received the requisite permission.

B. *Ruling of the District Court*

The district court granted the motion for summary judgment filed by the State of Wisconsin and Donna Chester. *Weinberger v. Wisconsin,* 906 F.Supp. 485, 494 (W.D.Wis. 1995). It held that the state was immune from suit, *id.* at 488, and that Officer Chester also shared that immunity insofar as she was sued in her official capacity. The claims brought under §§ 1985 and 1986 were dismissed for failure to state any facts that would support such a claim. The district court also dismissed the case against the unnamed defendants for failure to make timely identification of them. *Id.* at 494.

The court then turned to the allegation that, in her individual capacity, Officer Chester had deprived plaintiff's son of due process of law by her failure to make home visits. In determining that this claim must fail, the court first held that Mr. Weinberger had not established the basic causal premise that his son would not have been killed if Dahmer had not had the privacy of his apartment and the knowledge that he would not have been interrupted by a visit from his probation officer. In this regard, Mr. Weinberger had failed to establish, noted the district court, that Dahmer knew either that the probation officer would not visit the apartment or that any such visits would have been unannounced. Nor, continued the court, did Mr. Weinberger ever establish that the failure to visit the apartment either created or increased the harm to, or vulnerability of, Dahmer's victims. Finally, the court noted that

there was no evidence that Officer Chester ever knew of a substantial risk of serious harm to any of Dahmer's victims. Dahmer's compliance with the conditions of probation and the reports that she received from the experts to whom she had referred him gave her no reason to believe that he was dangerous or that a visit to his home was necessary to verify the absence of any illegality.

The district court then elected to retain jurisdiction over the state claim, but dismissed this claim for failure to comply with the statutory notice provision. Alternatively, the court held that Officer Chester was protected by the doctrine of official immunity because of the discretionary nature of her duties.

## II

## DISCUSSION

### A.

Summary judgment is appropriate when there are no genuine issues as to any material fact and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment initially must inform the district court of the basis for its motion; the party also must identify the record portions and the affidavits, if any, which it believes demonstrate the absence of a genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). The party opposing the summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). To defeat the motion, the nonmovant must show there is a genuine issue or dispute of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be entered. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. We review the district court's grant of summary judgment de novo. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).[2]

### B.

■■ We believe that Mr. Weinberger's claim under the Due Process Clause of the Fourteenth Amendment requires that we address but one issue.[3] Assuming that the other prerequisites are met, it is well established that a cause of action alleging a violation of the Due Process Clause can be sustained only if it is established that the defendant's actions can be characterized as reckless. *Archie v. City of Racine,* 847 F.2d 1211, 1219–20 (7th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). "[B]y reckless or deliberately indifferent conduct, we mean conduct that is criminally reckless—that is, conduct that reflects a complete indifference to risk such that we can infer the actor's knowledge or intent." *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992). Negligence by state officials does not violate the Due Process Clause of the Fourteenth Amendment. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (inmate injured slipping on pillow negligently left on stairway by prison official was not deprived of due process of law); *see DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 1002–03, 103 L.Ed.2d 249

2. As a threshold matter, we agree that the district court properly dismissed the claims against the State of Wisconsin and Officer Chester in her official capacity. These suits are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984). No showing has been made that the Attorney General had the authority to waive the State's Eleventh Amendment immunity by removal. *See Estate of Porter v. Illinois,* 36 F.3d 684, 690 (7th Cir.1994). We also agree that the district court did not

abuse its discretion in denying leave to amend the complaint to identify the additional parties.

3. Although unnecessary for our decision, we also note, as did the district court, that there is no evidence in the record to indicate that occasional home visits would have deterred Dahmer or would have lessened any risk to plaintiff's son.

We also note that, although we need not reach the issue, Officer Chester would be permitted the defense of qualified immunity with respect to this due process allegation.

(1989) (failure of state or local governmental official to prevent child abuse by private actor is not due process violation).

■ Mr. Weinberger submits that Officer Chester is an inexperienced state probation officer who was reckless in accepting 121 cases involving high-risk sexual offenders and in not making statutorily-required home visits. He contends that her failure to make home visits enhanced the danger to a cognizable, at-risk group: namely, young minority homosexual males. According to Mr. Weinberger, because Officer Chester's course of conduct was never to make home visits, Dahmer reasonably would have known that she would not make home visits. In this way, she endangered persons and precipitated Dahmer's actions.

We cannot accept this submission. In our view, the record simply will not support a determination that Officer Chester's conduct was reckless. The administrative code section governing parole/probation supervision allows probation officers to establish probation conditions designed to "achieve the goals and objectives" of probation. Wis. Admin. Code § DOC 328.04; *see Felce v. Fiedler,* 974 F.2d 1484, 1495 (7th Cir.1992). The particular administrative rule at issue, § DOC 328.04, sets forth the requirement that a probation officer shall monitor a client according to the designated level of supervision. Dahmer was a client under maximum supervision:

(a) *Maximum.* Maximum supervision shall require a minimum of one face to face contact with the client by a representative of the department every 14 days. Home visits shall be made at least once every 30 days unless this requirement is waived by a supervisor in writing....

As the administrative code provides, Officer Chester properly submitted requests for home-visit waivers to her supervisor, James Wake (who is not a defendant). Supervisor Wake approved and executed the waivers after considering such factors as favorable supervision adjustment, stability of residence, agent workload and potential danger to the agent. Officer Chester explained in her affidavit that she reviewed Dahmer's case with her supervisor before he authorized the waiver:

Of importance in our discussions were the facts that: a) Dahmer displayed a lower risk profile than did the typical client in the Sex Offender Unit; b) Dahmer, in contrast to the typical sex offender, had a stable employment history; c) the crimes for which he was convicted were not overtly violent; and d) Dahmer was very compliant with probation rules and other instructions [Officer Chester] gave him.

R.10 para. 44. The record in this case supports Officer Chester's statements. She offered reasonable bases for her decision to request waivers of home visits; her superior agreed with her assessment. The waiver was validly issued. None of the several mental health care professionals who were treating Dahmer while he was on probation suggested that he was dangerous or needed additional supervision.

The conduct described in the record and summarized in the preceding paragraphs is hardly the basis for a determination of recklessness. Indeed, it would be difficult to make a case for the proposition that the record would support a jury question for the breach of even a lesser standard of care.

### C.

#### 1.

■ The district court granted summary judgment to Officer Chester on the state law claims because plaintiff failed to allege that he had filed a notice of claim that complied with Wis. Stat. § 893.82 and because the notice he filed did not comply with the statute. Mr. Weinberger submits on appeal that there has been sufficient, substantial compliance with the statute. He asserts that he presented the "gist of the claim" within the 120-day statutory time period and that he merely failed to identify which employee was involved in the conduct for which he sought to bring suit. He claims that the state had to provide the identity of that employee.

■ Section 893.82 sets forth the requirements by which a plaintiff gives notice of injury. It requires that the notice be filed with the Attorney General within 120 days of

the "act" of a state officer, employee or agent in the discharge of his or her duties. A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted. *Yotvat v. Roth,* 95 Wis.2d 357, 290 N.W.2d 524, 527 (Wis.Ct. App.1980). Section 893.82 is jurisdictional and *strict* compliance is required. *Ibrahim v. Samore,* 118 Wis.2d 720, 348 N.W.2d 554, 557–58 (1984) (stating that the statute imposes a condition precedent to the right to maintain an action). There is no equitable basis for partial or "substantial" compliance, as Mr. Weinberger would wish. *See Oney v. Schrauth,* 197 Wis.2d 891, 541 N.W.2d 229, 233 (Wis.Ct.App.1995). Whatever reason Mr. Weinberger may offer for his inability to comply, the fact is that noncompliance is fatal to the claim. *See Peckham v. Spitz,* No. 96–1827, 1996 WL 710914, at *2 (Wis.Ct.App. Dec. 12, 1996).

### 2.

Finally, we agree with the district court that Officer Chester is immune under state law from individual liability with respect to the state law claims. The Wisconsin Supreme Court has made it clear that the responsibilities of a parole officer are discretionary and therefore subject to immunity. *C.L. v. Olson,* 143 Wis.2d 701, 422 N.W.2d 614 (1988). As our earlier discussion makes clear, Officer Chester's actions were not "malicious, willful, or intentional." *Id.* at 710, 422 N.W.2d 614.

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.