In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-1708

OLADELE OLADOTUN OMOSEGBON,

*Plaintiff-Appellant,*

*v.*

RICHARD H. WELLS, JOE WEIXLMANN,
C. AISHA BLACKSHIRE-BELAY, individually
and in their official capacities, and
Indiana State University,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 00 C 224—**Richard L. Young**, *Judge.*

ARGUED OCTOBER 28, 2002—DECIDED JULY 14, 2003

Before KANNE, DIANE P. WOOD, and EVANS, *Circuit
Judges.*

DIANE P. WOOD, *Circuit Judge.* Citing lukewarm per-
formance evaluations, Indiana State University (ISU)
decided not to renew Professor Oladele Omosegbon's
contract as a junior, untenured faculty member in the
Department of African and African-American Studies.
Omosegbon—to whom we refer hereafter as "Dele," follow-
ing the lead of his counsel—brought suit in Indiana state

court alleging that ISU and various members of the university had deprived him of his due process and academic freedom rights under the Fourteenth and First Amendments to the U.S. Constitution, and had also breached his employment contract in violation of Indiana law. ISU removed the case to federal court and then moved for summary judgment. The district court determined, without the benefit of the Supreme Court's recent clarification in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640 (2002), that all but Dele's federal-law claims for injunctive relief were barred by the Eleventh Amendment. The district court then found that the remaining federal-law claims failed on the merits because Dele could not show the property or liberty interest necessary to succeed on a procedural due process claim, and because his academic freedom claims were otherwise meritless. Dele appeals on all counts. In light of the Supreme Court's decision in *Lapides*, we now reverse in part the district court's jurisdictional holding, but we affirm the district court's grant of summary judgment on the merits as to all claims not dismissed for lack of jurisdiction, both federal and state.

## I

Dele was hired by ISU in 1998 as a junior, untenured professor in the African and African-American Studies Department. The offer was accompanied by a letter which read as follows:

> Tenure at Indiana State University is a status earned through service to this institution, and eligibility exists after the satisfactory completion of a pre-tenure probationary period of seven years of full-time university experience. You will be reviewed for tenure during the 2003-2004 academic year and with a positive evaluation and recommendation, will be eligible for

tenure status at the beginning of the 2005-2006 academic year. Continuation during the probationary period is based on annual faculty evaluations, which include among their criteria scholarly and creative activity as well as the quality of instruction, University and professional service, and other duties assigned by your chairperson.

Dele received two annual evaluations in accordance with the terms outlined in the letter, in fall of 1998 and fall of 1999. Both evaluations were conducted by a Personnel Committee of four professors from the Department, appointed by the Department chairperson, Dr. C. Aisha Blackshire-Belay. In each case, Blackshire-Belay took the Committee's findings and final vote under advisement and forwarded her own recommendation to higher-ups at ISU. The fall 1998 evaluation was lukewarm at best. The Personnel Committee voted 4-0 to make a conditional reappointment to a second probationary year within the Department. Blackshire-Belay also favored conditional reappointment, which is obviously not as desirable as unconditional reappointment (the other favorable possibility open to the University). Dean Joe Weixlmann of the College of Arts and Sciences agreed and sent a letter (which Dele also received) up the chain to Provost Richard H. Wells, outlining various problems with his teaching duties and his scholarly output. Provost Wells thereafter made a conditional reappointment of Dele.

The fall 1999 evaluation was also lukewarm, but slightly better than the first. This time, the Personnel Committee deadlocked, with two members favoring conditional reappointment, and two members favoring unconditional reappointment. Blackshire-Belay again took the Committee's recommendation under advisement, but this time recommended that Dele not be reappointed to a third probationary year. Dean Weixlmann and Provost Wells

separately concurred, and Wells delivered the bad news to Dele by letter dated December 9, 1999.

Pursuant to university by-laws, Dele requested a formal hearing regarding the termination decision; that hearing took place before a committee of the ISU faculty on May 22, 2000. The committee recommended reinstatement for Dele. Under ISU's by-laws, however, this recommendation was non-binding, and Dean Weixlmann and Provost Wells separately rejected the committee's position and held fast to the decision not to re-appoint Dele. Dele responded with this suit.

## II

We turn first to those parts of the district court's order that pertain to jurisdiction. The district court held that the Eleventh Amendment barred Dele's claims for money damages against the state (of which ISU is a part) and against the individual defendants in their official capacities. While we agree that those claims cannot go forward, there is no need to reach the Eleventh Amendment issue, because the state is not a "person" that can be sued in this way under 42 U.S.C. § 1983. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); see also *Lapides*, *supra*, 122 S.Ct. at 1643; *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 & n.9 (2000). Dele's claims against the individuals allegedly in their individual capacity present a slightly more complex question, but because he seeks backpay and other forms of monetary compensation based on an employment contract, we think it so inescapable that any resulting judgment will be paid by the state rather than the individual defendants that this bears no resemblance to a bona fide individual capacity suit. (The individuals, after all, were not even parties to the contract in their individual capacity.) Accordingly, he has no

§ 1983 claim against these defendants either. Finally, the district court held, and we agree, that Dele's federal-law claims for injunctive relief come within the *Ex parte Young* exception to the Eleventh Amendment and therefore are not barred. See 209 U.S. 123 (1908); *MCI Telecomm. Corp. v. Ill. Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000).

Where we do find error is in the district court's dismissal of Dele's state-law claims for lack of jurisdiction under the rule first announced in *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981). The fact that this was error became clear after the Supreme Court's intervening decision in *Lapides*. The defendants conceded the point in their brief before this court, citing *Lapides* for the proposition that removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive a State's objection to litigation of the matter in a federal forum.

While we agree that *Lapides* ultimately commands reversal of the district court's dismissal of Dele's state-law claims, *Lapides* must be read with care. What the Court said, more precisely, was that a state's voluntary invocation of a federal court's jurisdiction through removal waives a state's "otherwise valid objection" to litigation of a state-law claim in a federal forum. See *Lapides,* 535 U.S. at 623, 122 S.Ct. at 1646. The result is that there is an extra layer to our sovereign immunity analysis regarding Dele's state-law claims, given this Court's repeated holdings that under *Erie* "state rules of immunity are binding in federal court with respect to state causes of action." *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 779 (7th Cir. 1991); see also *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996). Before we find the rule announced in *Lapides* to be controlling here, we must first satisfy ourselves that Indiana's state-law immunity rules would have allowed an Indiana court to hear

Dele's state-law contract claim had this lawsuit not been removed to federal court.

The Indiana Supreme Court abolished common-law sovereign immunity in 1972. See *Campbell v. State*, 284 N.E.2d 733 (Ind. 1972). The Indiana legislature responded with the Indiana Tort Claims Act (ITCA), Ind.Code § 34-13-3-3, which "established extensive immunity provisions which shield governmental units from [tort] liability . . . ." *Benton v. City of Oakland City*, 721 N.E.2d 224, 232 (Ind. 1999). But the ITCA is neither here nor there for the purposes of Dele's claims, which sound in contract, not tort. The rule for contract claims in Indiana state courts appears to be the one announced in *Campbell*. This means that an Indiana state court could have heard Dele's state-law claims against ISU and its officials, and thus under *Lapides* that the federal court could do so also, in the exercise of its supplemental jurisdiction. Compare *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 546 (2002) (holding that supplemental jurisdiction statute, 28 U.S.C. § 1367(d), did not toll state statute of limitations for state claims against *unconsenting* state when federal claim dismissed on sovereign immunity grounds).

## III

On the merits, Dele raises two principal arguments. First, he claims that the district court erred in granting summary judgment against him on his claims for violation of his due process and academic freedom rights under the Fourteenth and First Amendments respectively. Second, he urges that the district court brushed off his breach of contract claim too hastily. We treat them in turn, using the *de novo* standard of review and viewing all facts and drawing all inferences in favor of Dele. See *Weinberger v. Wisconsin*, 105 F.3d 1182, 1186 (7th Cir. 1997).

**A**

Dele's core claim is that defendants deprived him of constitutionally protected property and liberty interests by failing to re-appoint him to his position at ISU. The standard elements of a due process claim include whether the plaintiff suffered a deprivation of a cognizable property or liberty interest, and whether any such deprivation occurred without due process. See *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, a critical initial step is Dele's assertion that his employment contract with ISU gave rise to a property interest under Indiana state law, or that defendants' decision not to re-appoint him imposed sufficient stigmatic and reputational harm to implicate a constitutional liberty interest. As to the latter showing, it is unclear from his complaint whether Dele sought to proceed in the district court under a theory of procedural or substantive due process, but we find the point to be of no moment to our present disposition of his claim.

To establish a protectable property interest, a plaintiff must be able to point to a substantive state-law predicate creating that interest. See *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The interest must be more than *de minimis*, which typically calls on the plaintiff to demonstrate some form of provable pecuniary harm. See *Swick v. City of Chicago*, 11 F.3d 85, 87-88 (7th Cir. 1993). In the employment context, we have generally required that a plaintiff be able to show that the terms of her employment provide for termination only "for cause," see *Farmer v. Lane*, 864 F.2d 473, 479-80 (7th Cir. 1988), or otherwise evince "mutually explicit understandings" of continued employment, see *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 545 (7th Cir. 1998) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)).

Under these standards, Dele has failed to establish the necessary state-law predicate to maintain a procedural

due process claim on the basis of an invaded property interest. In *Colburn v. Trustees of Indiana University*, 973 F.2d 581 (7th Cir. 1992), we rejected a claim almost identical to Dele's. The plaintiffs in *Colburn* contended that their annual re-appointment to "probationary" positions on the Indiana University faculty demonstrated that they had a protectable property interest that could not be taken away without due process of law. We disagreed, noting that "[a] property interest is not established by general statements in handbooks, appointment documents or elsewhere that an employee will be judged based on some 'criteria.'" *Id.* at 589. We further noted that a discretionary re-appointment system could never serve as grounds for a property interest unless "an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Id.*; see also *Hohmeier v. Leyden Cmty. High Schs. Dist. 212*, 954 F.2d 461, 465 (7th Cir. 1992); *Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir. 1991); *Upadhya v. Langenberg*, 834 F.2d 661, 664 (7th Cir. 1987) ("[A] professor serving on a series of annual appointments, without an entitlement to renewal founded on state law, has no property interest in his position."). A contrary holding, we observed, "would be inconsistent with the existence of a formalized tenure process." *Colburn*, 973 F.2d at 590; see also *Staheli v. Univ. of Miss.*, 854 F.2d 121, 124 (5th Cir. 1988); *Haimowitz v. Univ. of Nev.*, 579 F.2d 526, 528 (9th Cir. 1978). In this case, Dele's employment contract grants broad discretion to ISU in making re-appointment decisions. Because the agreement states that the re-appointment process will be conducted according to various criteria—including, as in *Colburn*, the usual trio of teaching, scholarship, and university service—Dele has failed to establish a protectable property interest on which to base a procedural due process claim.

Dele's efforts to show a liberty interest fare no better. A plaintiff may prove a deprivation of a liberty interest by

showing damage to her "good name, reputation, honor, or integrity," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), but any stigmatic harm must take concrete forms and extend beyond mere reputational interests, *Paul v. Davis*, 424 U.S. 693, 711-12 (1976). Further, a plaintiff must show more than that she was "not rehired in one particular job." *Sindermann*, 408 U.S. at 599.

Here again, prior decisions foreclose any finding of the requisite liberty interest. The district court rejected Dele's claim of deprivation of a liberty interest because "there is no evidence that any statements regarding Plaintiff's teaching ability (or lack thereof) were ever made public." Moreover, the record was devoid of the kind of evidence needed to show that a negative decision on a renewal of a probationary contract was stigmatizing. A denial of tenure or employment "is only stigmatizing if it is accompanied by a publicly announced reason that impugns the employee's moral character or implies dishonesty or other job-related moral turpitude." *Hedrich v. Bd. of Regents of Univ. of Wis. Sys.*, 274 F.3d 1174, 1184 (7th Cir. 2001) (citations and quotation marks omitted); see also *Roth*, 408 U.S. at 573; *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138-39 (7th Cir. 1984). Thus, to avoid summary judgment, Dele had to show that the news of his denial of re-appointment was both publicly disseminated and also sullied his moral character.

Dele's sole argument on this front is that other members of the department were aware of ISU's failure to re-appoint him. Even if we were to assume that this internal dissemination was enough to count as "public" (and we make no finding on that), Dele offered no information about the content of this "announcement"—*i.e.*, whether the non-renewal of his contract implied dishonesty or moral turpitude in the conduct of his duties as a university professor. In short, Dele's attempt to establish a liberty interest fails. With neither a property interest nor

a liberty interest at stake, Dele could not assert a claim for a denial of due process, and thus the district court correctly granted summary judgment in favor of the defendants on these claims.

As a final note, Dele makes the innovative argument that his claim should be evaluated under a heightened standard because the termination of his employment with ISU might jeopardize his prospects of obtaining a green card, and could ultimately subject him to deportation. The gist of his contention is that ISU has assumed "a special position" over him "by becoming his sponsor for a green card which was dependent upon Dele maintaining his position as an assistant professor at ISU." There are at least three problems with this line of argument. First, Dele himself concedes that he is unable to find any authority for this proposition, and instead falls back on the more general proposition that "subjecting persons to deportation has been recognized as a liberty right under federal law." See, *e.g.*, *Jideonwo v. INS*, 224 F.3d 692, 696-97 (7th Cir. 2000). Second, nothing whatever indicates that ISU assumed any "special position" vis-á-vis Dele under federal immigration law. ISU does not make immigration policy and is under no obligation to do anything but ensure that its employment practices comply with the relevant federal laws and regulations. The fact that a collateral consequence of Dele's loss of employment at ISU may be a change in his immigration status is not enough to give rise to a duty of perpetual employment on ISU's part. Finally, it seems likely that Dele has things backwards. If his visa was based on special skills or needs, then ISU probably had a duty to re-certify him periodically, using an honest evaluation of his continued qualifications. If that evaluation produced a negative result, then it would have had to let the immigration authorities know.

**B**

We next turn to Dele's academic freedom claims. Dele finds a protected right to academic freedom in the University Handbook, which contains the statement that a "teacher is entitled to full freedom in research and in the publication of the results, subject to the adequate performance of his/her academic duties." He complains that Blackshire-Belay tried to prevent him from associating with two other faculty members in the department, Dr. Kwasi Ampene and Dr. Francois Muyumba. Finally, Dele construes Blackshire-Belay's advice that he shift the focus of his community activities from African to African-American culture as an infringement of his academic freedom.

Academic freedom rights are rooted in the First Amendment. Generally speaking, the state may not take action that "cast[s] a pall of orthodoxy over the classroom," which is traditionally the "marketplace of ideas." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Even so, academic freedom "is not absolute, and must on occasion be balanced against important competing interests." *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1275 (7th Cir. 1982). Further, we have repeatedly noted that "one dimension of academic freedom is the right of academic institutions to operate free of heavy-handed governmental, including judicial, interference." *Osteen v. Henley*, 13 F.3d 221, 225-26 (7th Cir. 1993); see also *Webb v. Bd. of Trs. of Ball State Univ.*, 167 F.3d 1146, 1149 (7th Cir. 1999); *Piarowski v. Ill. Cmty. College Dist. 515*, 759 F.2d 625, 629 (7th Cir. 1985).

Because academic freedom rights must ultimately flow from the First Amendment, claims of their violation are subject to all the usual tests that apply to assertions of First Amendment rights. See *Keen v. Penson*, 970 F.2d 252, 257-58 (7th Cir. 1992) (rejecting an academic free-

dom claim on the grounds that the communication in question did not implicate a matter of public concern); see also *Piarowski*, 759 F.2d at 628-29 (applying public forum analysis to an academic freedom claim). In light of this fact, we agree with the district court that Dele's academic freedom claim fails because he did not allege that he was ever restricted from or sanctioned for speaking publicly about an issue. Neither of the two actions upon which Dele focuses his argument—Blackshire-Belay's advice not to associate with particular faculty members, and her advice to devote more time to community activities involving African-American, as opposed to African, culture—restricted his ability to disseminate publicly his views as a teacher or scholar. Any disputes Dele had concerning his association with other faculty or his community activities concerned the performance of his duties as an employee of the university and a member of the department, not as an interested citizen or an academic communicator of protected ideas. See *Clark v. Holmes*, 474 F.2d 928, 931 (7th Cir. 1973). See generally *Connick v. Meyers*, 461 U.S. 138, 146 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 574-75 (1968).

Further, even though we must assume at the summary judgment stage that Blackshire-Belay made the comments in question, we are required to draw only the reasonable inferences from those comments that favor Dele. If the case were otherwise in doubt, we would find that no reasonable jury could find that Blackshire-Belay's advisory comments amounted to restrictions on his basic speech rights. Dele's academic freedom claims were properly dismissed by the district court.

**C**

We turn finally to Dele's state-law contract claim. As noted previously in our consideration of jurisdiction, the

district court did not resolve the merits of Dele's state-law claims, instead dismissing them on Eleventh Amendment grounds. On appeal, Dele now asserts that the district court abused its discretion by failing to remand his state-law contract claim for adjudication in state court. ISU, on the other hand, urges us to reach the merits of the state-law claims, because they can be resolved as a matter of law.

It is not entirely clear that the district court considered the question whether it should remand the state claims, in lieu of dismissing them on Eleventh Amendment grounds. At the time, believing itself bound by the Supreme Court's decision in *Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381 (1998), the district court may have thought it had only one option available to it—that of dismissal. One option for us would therefore be to remand this case to the district court to give it an opportunity to exercise its discretion under 28 U.S.C. § 1367(c)(3) to decide whether to retain the supplemental claim or to remand it. Under the circumstances, however, we believe that this would be a waste of judicial resources. The question of law presented by Dele's state-law claim is straightforward. Because we may affirm a district court on any ground supported by the record, see *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1038 (7th Cir. 1998), we can decide whether a trial is warranted or not on *de novo* review.

The merits of Dele's breach-of-contract claims closely track those of his property-based due process claim. While Dele may have been something more than an at-will employee, his employment contract specified that his services were being tapped for a period of one year. Renewal of the contract was contingent on performance evaluations according to particular criteria. As is the case in most states, Indiana law provides that an enforceable employment contract is created when the parties

agree that employment shall continue for a fixed or ascertainable period. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). The duration term of such a contract, however, is an essential element that is fully enforceable by either party. *Id.*; see also *Ewing v. Bd. of Trs. of Pulaski Mem. Hosp.*, 486 N.E.2d 1094, 1098 (Ind. Ct. App. 1985). Here, it is undisputed that ISU allowed each of Dele's two contracts to run for its complete one-year term. With no disputed issue of material fact relevant to the contract theory, ISU was entitled to summary judgment on the merits. Accordingly, we modify the dismissal of these claims from one for want of jurisdiction to dismissal with prejudice on the merits.

## IV

In conclusion, the district court properly dismissed Dele's federal claims for money damages. Dele does not have the necessary property or liberty interest to support a due process claim, and the facts do not support any First Amendment academic liberty claim either. Finally, ISU is entitled to judgment on Dele's breach of contract claims. We AFFIRM the judgment of the district court, as modified in accordance with this opinion to reflect the change in the court's jurisdiction over the state-law claims against ISU.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*