In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-2032
QUINTELLA BOUNDS,
 Plaintiff-Appellant,
 v.

COUNTRY CLUB HILLS SCHOOL
DISTRICT 160, et al,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:20-cv-03283 — Ronald A. Guzmán, Judge.
 ____________________

 ARGUED NOVEMBER 28, 2022 — DECIDED APRIL 10, 2023
 ____________________

 Before ROVNER, ST. EVE, and KIRSCH, Circuit Judges.
 ROVNER, Circuit Judge. Dr. Quintella Bounds, formerly em-
ployed as an administrator for the Country Club Hills School
District in suburban Chicago, has sued the School District
contending, as relevant here, that the School District deprived
her of due process by posting her position as vacant after she
did not timely sign a written employment contract for the
forthcoming school year. The district court entered summary
2 No. 22-2032

judgment in favor of the School District on this claim and re-
linquished jurisdiction over a companion state-law claim.
Bounds v. Country Club Hills Sch. Dist. 160, 2022 WL 1487332
(N.D. Ill. May 11, 2022). Bounds appeals, and we affirm.
 I.
 Bounds was initially hired by the School District’s Board
of Education as the director of student services for a one-year
term beginning on July 1, 2019 and not to extend beyond June
30, 2020. Her contract contained no provision for renewal of
her initial term and specified that she was an at-will em-
ployee. In February 2020, Bounds met with the District’s in-
terim superintendent, Dr. Earline Scott, for a performance
evaluation. Scott told Bounds that her performance was excel-
lent and that Scott would recommend to the Board that her
employment be renewed for the forthcoming school year.
Bounds asked for a raise, but Scott advised her that the Board
would not offer her a raise; Scott indicated that her salary and
all other terms of her contract would remain the same as in
the prior year. According to Bounds, she assented and had a
mutual understanding with Scott that her employment, sub-
ject to the Board’s approval, would be renewed on those
terms.
 The Board met on March 17, 2020, to discuss who among
the District’s administrators it wished to keep on for the fol-
lowing year and to review the proposed written contracts for
those administrators. After deciding that it wanted to amend
the contracts in certain respects, the Board postponed a vote
on the renewals until the contracts had been revised.
 One week later, on March 24, the Board met again in
closed session and, according to the minutes of that meeting,
No. 22-2032 3

“approved the Employment Agreements for the period of
July 1st, 2020 through June 30, 2021” for Bounds and five
other administrators. Those agreements had been emailed to
Scott earlier that same day by the Board president, and Scott
was told that once the Board had approved them, she should
email them to each of the renewed administrators with in-
structions to sign them by March 31, 2020.
 Scott notified Bounds and the other administrators on the
evening of March 24, following the Board’s meeting, that she
would be emailing the approved contracts to them the follow-
ing day and that they had until March 31 to sign the contracts
and return them to Scott. On the morning of March 25, Scott
emailed to Bounds her contract and reiterated that she should
sign the contract and return it by March 31. Within 20 minutes
of receiving the email with the contract, Bounds replied to
Scott noting that her vacation days had been reduced from 20
to 15; Scott followed up by telephone and told Bounds this
was a matter she would need to take up with the Board pres-
ident.1
 Later that same day, Bounds was taken ill with what
turned out to be a presumptive case of Covid-19. She went to
the hospital emergency room that day and again two days
later and was advised to quarantine at home for 14 days. It
appears, though, that she was able to do some amount of
work from home. She did not, however, sign the agreement

 1 The record indicates that the reduction in vacation days was a

uniform change made to all of the administrator contracts. R. 92-16 at 34,
Jacqueline Doss Dep. 126–27. Bounds testified that she made inquiries to
the Board about the change but never received a reply. R. 92-16 at 29–30,
Quintella Bounds Dep. 62–63, 114, 117.
4 No. 22-2032

Scott had emailed to her. Nor did she ask for more time to
respond or tender the signed contract. On April 1, Scott tele-
phoned Bounds to remind her that she had not returned the
signed contract. Bounds replied that changes had been made
to the contract and that she wanted her attorney to review the
agreement. Scott warned her that the Board previously had
released another administrator who did not sign an employ-
ment contract by the deadline for doing so. On the following
day, Scott advised Bounds that the Board had requested that
her position be posted as vacant in view of the fact that
Bounds had not returned a signed contract for the following
year. The position was in fact posted that same day, as was
that of another administrator who had failed to sign and re-
turn her contract. On April 14, Bounds was formally notified
by mail that her position had been posted as vacant given that
she had not returned her signed contract. Bounds never did
sign her contract nor did she re-apply for the position once it
was posted. The position was filled in June 2020. Bounds
worked through the end of that same month, completing the
initial one-year term for which she had been employed.
 Bounds filed this suit pursuant to 42 U.S.C. § 1983 against
the District, the members of the School Board, and Scott con-
tending, as noted, that the Board had deprived her of proce-
dural due process by rescinding her employment agreement
and posting her position as vacant without notice or the op-
portunity to be heard before it did so. Although the district
court denied a motion to dismiss this claim, the court eventu-
ally granted summary judgment in favor of the defendants,
reasoning that because Bounds had never signed the written
employment contract presented to her and had not otherwise
entered into an oral agreement with the School District for her
continued employment, she lacked the property interest that
No. 22-2032 5

was necessary to support a procedural due process claim.
Bounds, 2022 WL 1487332.
 II.
 As this case was resolved on summary judgment, we re-
view the district court’s judgment de novo and grant Bounds
the benefit of a favorable review of the record evidence. E.g.,
Physicians Healthsource, Inc. v. A-S Medication Sols., LLC, 950
F.3d 959, 964 (7th Cir. 2020).
 A procedural due process claim requires proof that the de-
fendants (1) engaged in conduct under color of state law,
(2) that deprived the plaintiff of a protected property interest,
(3) without due process of law. Redd v. Nolan, 663 F.3d 287,
296 (7th Cir. 2011). This case turns on the second of these ele-
ments, a protected property interest, and specifically whether
Bounds had a legitimate expectation of continued employ-
ment with the District. This requires Bounds to show more
than a “unilateral expectation” of a job on her part; she must
have had a “legitimate claim of entitlement to it.” Bd. of Re-
gents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972). We
look to state law as the source of a protected property interest.
Cromwell v. City of Momence, 713 F.3d 361, 363–64 (7th Cir.
2013). In Illinois, employment other than for a fixed duration
is presumed to be at will, e.g., Cheli v. Taylorville Cmty. Sch.
Dist., 986 F.3d 1035, 1039 (7th Cir. 2021), and Bounds’ contract
for the 2019-20 school year expressly characterized her as an
at-will employee, so her claimed right to continuing employ-
ment beyond that school year must have the support of a state
statute, a local ordinance, a contract, or an understanding lim-
iting her employer’s discretion to keep Bounds on or let her
go, see Redd, 663 F.3d at 296; see also Colborn v. Trs. of Ind. Univ.,
973 F.2d 581, 589–90 (7th Cir. 1992). Bounds looks to contract
6 No. 22-2032

law in support of her claim here, and indeed, “mutually ex-
plicit understandings” of continued employment may give
rise to a property interest. Omosegbon v. Wells, 335 F.3d 668,
674 (7th Cir. 2003) (quoting Crim v. Bd. of Educ. of Cairo Sch.
Dist. No. 1, 147 F.3d 535, 545 (7th Cir. 1998)). On the facts of
this case, which involves the renewal of an employment con-
tract, Bounds must show that the District extended her an of-
fer for a second one-year term of employment and that she
had accepted the offer, resulting in a binding agreement. See
Zemke v. City of Chicago, 100 F.3d 511, 513 (7th Cir. 1996); Lyz-
nicki v. Bd. of Educ., Sch. Dist. 167, Cook Cnty., Ill., 707 F.2d 949,
951 (7th Cir. 1983).
 Bounds’ theory of the case boils down to this: When she
and Scott met to discuss her evaluation in February, and Scott
told her that she would recommend to the Board that her em-
ployment be renewed for the next school year without a raise
and otherwise on the same terms as the previous year, and
Bounds agreed to her continued employment on those terms,
she and Scott arrived at a mutual understanding as to the pro-
visions of her employment agreement for the following year,
and all that remained was for the Board to ratify that under-
standing. Thus, Bounds reasons that when the School Board
on March 24 voted to approve her continued employment for
the following year, the Board entered into a binding, albeit
unwritten agreement to employ her for another year on the
terms she and Scott had discussed. In this regard, she argues
that 105 ILCS 5/10-23.8a, which delineates a school district’s
authority to enter into employment contracts for school ad-
ministrators, does not require that agreements of a year or less
be in writing. Accordingly, in Bounds’ view, the fact that she
never signed a written agreement is immaterial: she still had
an oral agreement with Scott and the Board that supported
No. 22-2032 7

her continued expectation of employment and serves as the
property interest supporting her due process claim.
 Bounds’ argument, however, depends on an unreasonable
interpretation of what the Board did on March 24 when it ap-
proved her employment agreement for the following year.
Bounds concedes that Superintendent Scott lacked the au-
thority to unilaterally renew her contract: only the Board had
that authority. (Bounds Br. 25.) What Bounds posits about the
Board vote on March 24 was that it was a vote to renew her
employment, period, such that the vote can be paired with
Scott’s prior representation to her that she would be em-
ployed on the same terms as the previous year (with no raise)
and her spoken assent to continued employment on those
terms so as to yield an enforceable, oral agreement. But this
theory wholly ignores the important qualifier that what the
Board approved on March 24 was her employment subject to
the terms set forth in the written contract that was subse-
quently emailed to her. Indeed, there appears to be no dispute
that the reason why that vote was postponed from March 17
to March 24 was that the Board wanted certain revisions to
the contracts for Bounds and the other administrators under
consideration. It therefore defies reality to suggest that the
Board’s March 24 vote can somehow be divorced from the
terms of the written employment contract tendered to
Bounds. As the district court pointed out, the Board’s vote
was to approve “employment agreements,” not “employ-
ment.”2022 WL 1487332, at *6 (emphasis ours). And there is
no evidence that the agreement the Board approved for
Bounds was anything other than the written agreement that
Scott subsequently emailed to her.
8 No. 22-2032

 Bounds suggests that the minutes of the March 24 Board
meeting are ambiguous as to what specifically was approved,
and because a recording of neither that meeting nor the March
17 meeting is available,2 she wants the court to indulge an in-
ference that the Board’s action can be construed in a way that
is consistent with her theory that the Board’s renewal of her
employment was not tied to the terms of any written agree-
ment. But there is nothing ambiguous about the Board
minutes, particularly when one has in mind the reason why
the vote on the renewal of Bounds’ contract (and those of five
other administrators) was postponed from March 17 to March
24: the Board wanted certain revisions incorporated into the
written contracts. And without more, we do not agree that the
lack of a recording of either meeting supports an inference in
her favor as to the nature of the Board’s vote.
 Relatedly, Bounds makes too much of section 23.8a and
the statutory language she reads as implicitly allowing un-
written employment agreements for terms of one year or less.
For present purposes, we can accept Bounds’ interpretation of
the statute as to oral agreements. But in this instance, the
Board was not entering into an oral agreement with Bounds—
it offered her a written agreement. And standing alone, the
statute does not give rise to a property interest as to Bounds’
continued employment with the School District. The statute

 2 It appears that as the School Board transitioned from in-person to

virtual meetings with the start of the Covid-19 pandemic, at least some
Board meetings were not recorded. The district court was not convinced
that a recording of the March 24 meeting had been made. R. 99 at 2, 6. The
evidence as to whether a recording was made of the March 17 meeting
was mixed, R. 99 at 3, but the court found no evidence that any such re-
cording was deliberately destroyed in anticipation of litigation, R. 99 at 3–
4.
No. 22-2032 9

merely speaks to what the Board had the statutory power to
do and not to what actually happened here.
 As Bounds has conceded, only the Board had the authority
to enter into a binding agreement with her, and the written
agreement sets forth the terms that the Board (as opposed to
Scott) was offering to Bounds. Bounds may have been un-
happy with the reduction in vacation days and whatever
other revisions the Board had made to the written agreement.
But the fact is, Bounds never signed the agreement, never
asked for more time to consider the agreement, and never
convinced the Board to change the terms.
 In the briefs, Bounds makes much of the fact that it was
not at all unusual for administrators like herself to be hired
and to begin work without an executed written agreement.
Bounds represents that she herself started work without a
signed agreement in 2019. But any such prior occurrences get
her nowhere here. The Board offered her renewed employ-
ment for the 2020-21 school year subject to the terms set forth
in a written agreement that it tendered to her, and Bounds
was expressly asked to sign the contract—signaling her ac-
ceptance—by a date certain. Whatever had occurred in the
past, there is no dispute that Bounds was on notice in this in-
stance that she was required to sign the tendered contract for
the following year and to do so by the date Scott communi-
cated to her. When the deadline passed and Scott called to re-
mind Bounds that her signature was required, Bounds replied
that she wanted to consult with her counsel about the revi-
sions that had been made to the contract, thereby indicating
that she was not yet prepared to accept the agreement. The
fact is, Bounds never signed the agreement and thus never ac-
cepted the offer that the Board had extended to her. See
10 No. 22-2032

Lyznicki, 707 F.2d at 951 (plaintiff had no property interest in
continued employment with school district when school
board first voted to renew his contract but four months later,
on recommendation of superintendent, voted not to renew his
contract, and plaintiff had not signed a contract in the interim:
“[N]o contract was signed. There was at most an offer; there
was no acceptance.”). Consequently, Bounds had no mutual
understanding with the District and thus no enforceable ex-
pectation as to her continued employment for the following
year.
 There is no merit to Bounds’ follow-up contention that the
Board’s deadline for signing the agreement was invalid be-
cause it was not set forth in the contract itself. Acceptance
deadlines are de riguer, see 1 Williston on Contracts § 5:7 (4th
ed. updated through Oct. 2022), and it is not out of the ordi-
nary for such a deadline to be communicated separately with-
out inclusion in the proposed contract itself. See, e.g., Golbeck
v. Johnson Blumberg & Assocs., LLC, 2017 WL 3070868, at *2
(N.D. Ill. July 19, 2017) (deadline for acceptance of loan mod-
ification agreement set forth in letter communicating offer).
Scott’s email communicated the Board’s offer to Bounds: em-
ployment for the following year on the terms set forth in the
attached contract, which if agreeable to Bounds she was to ac-
cept by signing the contract by the date specified in the email.
There is no dispute that the deadline was communicated to
Bounds, that she was aware of it, and that she at no time ac-
cepted the agreement by signing it, whether before or after
the deadline.3

 3 We do not deem it significant that the deadline was not reflected in

the minutes of the March 24 Board meeting at which the Board voted to
 (continued)
No. 22-2032 11

 One can have sympathy for the fact that Bounds was ill
during the week that she was given to review and sign the
agreement. But she was able to do work during that period of
time and, again, she never asked for more time to review the
contract. Even when Scott warned her on April 1 that she was
at risk of having her position posted, she did not belatedly
sign the agreement. Nor did she re-apply for the position two
weeks later when she was sent notice of the posting.
 Under all of these circumstances, we agree with the dis-
trict court that Bounds did not have a property interest subject
to due process protections: she had not entered into an en-
forceable agreement with the Board for the 2020-21 school
year and thus had no legitimate expectation of continued em-
ployment with the School District.
 III.
 For the foregoing reasons, we AFFIRM the district court’s
judgment.

approve Bounds’ contract for the 2020-21 school year. There is no dispute
that the Board had the inherent authority to impose such a deadline on
behalf of the School District and that it instructed Scott to transmit the
proposed contract to Bounds with the deadline it chose. Given that the
end of the 2019-20 school year was approaching and the School District
was adapting to remote instruction as a result of the Covid-19 pandemic,
the District had a need to know in a timely manner whether its adminis-
trators would accept the approved contracts for the following year and to
find replacements if they did not.